**IN THE COURT OF APPEALS OF IOWA**

No. 13-1264
Filed June 25, 2014

**WILLIAM KUBA,**
　　　　Plaintiff-Appellant,

**vs.**

**WILLIAM PENN UNIVERSITY,**
　　　　Defendant-Appellee.
_____

　　　　Appeal from the Iowa District Court for Mahaska County, Joel D. Yates, Judge.


　　　　William Kuba appeals the district court ruling denying and dismissing his breach of contract claims against William Penn University. **AFFIRMED.**



　　　　Randall Stravers of the Stavers Law Firm, Oskaloosa, for appellant.

　　　　David Luginbill of Ahlers & Cooney, P.C., Des Moines, for appellee.


　　　　Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**BOWER, J.**

William Kuba appeals the district court ruling denying and dismissing his claims against William Penn University. Kuba contends the district court erred by finding William Penn did not breach his employment contract. We find under the employment contract, including the employee handbook, Kuba had the responsibility to set up his own pre-tenure evaluation and failed to do so. We also find the tenure appeal process in place offers only a suggestion to William Penn, not an obligation. William Penn did not breach the employment contract. Accordingly, we affirm.

## I.     Background Facts and Proceedings

William Kuba is a former employee of William Penn University. Kuba was hired by the University in a tenure-track position for the 2007-2008 academic year. The terms of Kuba's hiring did not guarantee him the right to tenure, but the contract and the William Penn's employee handbook set out a specific process designed to evaluate Kuba's candidacy for a permanent, tenure-level position. During Kuba's time at William Penn, and as the tenure evaluation process proceeded, Kuba was employed under a succession of one-year contracts.

Starting in the 2009–10 academic year, each of Kuba's one-year contracts included language that reads in part:

> All parties herein agree to be bound by the provisions and procedures outlined in the Faculty and Staff Handbook. By signing this contract the faculty agrees to uphold the mission of the University as stated in the catalog.

The employee handbook sets out the procedure for acquiring tenure. First, the pre-tenure evaluation is to be conducted near the end of the employee's second full academic year. The handbook requires the employee "initiate" the evaluation; however, the method by which the evaluation is to be initiated is not described. The evaluation is intended to give both the employee and the Vice President of Academic Affairs an opportunity to discuss the employee's candidacy and "arrive at a mutual understanding of expectations regarding tenure." The result of the evaluation is a written summary of the process that is to be placed in the employee's personnel file. The pre-tenure evaluation is designed to provide the employee with an understanding of what materials will be necessary for consideration of their tenure candidacy with ample time before formal consideration. Though they disagree on the circumstances, the parties agree there was no pre-tenure evaluation of Kuba.

The employee must initiate the formal review for tenure by December 1 of the employee's fifth full academic year. The Faculty Promotion and Tenure Committee (FPTC) is the body charged with conducting the initial phase of the review. The handbook describes a number of materials that must be provided to the FPTC so the candidacy can be fully considered. Evaluation guidelines are also set out in the handbook, as are certain specific deadlines. At the end of the process, the FPTC makes a formal recommendation on the candidacy to the Vice President for Academic Affairs. This recommendation must also be provided to the tenure candidate, and must be made by the end of February. To be granted tenure, the FPTC must make a tenure recommendation, and then the Vice President for Academic Affairs makes an additional recommendation which

is forwarded, by the third week of March, to the University President, who, by the third week in April makes any additional recommendations to the Board of Trustees. The Board of Trustees makes the final decision during their June board meeting. When the FPTC recommends denying tenure, the employee may request the reasons for denial, which may start an appeals process.

When the appeals process is initiated, the University President convenes an appeals committee which is charged with evaluating whether the FPTC followed the proper procedures during the tenure review process. If the appeals committee determines a procedural error has occurred, a recommendation, not a mandate, for remedying the situation is sent to the FPTC.

Kuba, along with two other employees, started the tenure review process. Kuba filed a dossier with the FPTC containing the documents he thought were necessary to support his candidacy. The FPTC immediately recognized all three dossiers were lacking in some form. Kuba's dossier, in particular, was less voluminous than the others. The FPTC sought and received permission to extend the deadlines so each candidate could expand upon their dossier and improve the quality of the documents submitted. Kuba received an email from Pam Martin, a member of the FPTC, which requested six types of documents. Kuba testified the email was somewhat unclear, leaving him with the impression the missing documents may have already been included in his dossier but overlooked by the FPTC. Kuba simply responded by reorganizing the dossier and resubmitting it for consideration.

Kuba's candidacy was ultimately rejected by the FPTC. He appealed the decision and, appearing personally before the appeals committee, claimed the

FPTC failed to follow the proper procedures in the handbook as he was not granted a pre-tenure evaluation.[1] Kuba believes his dossier would have been more complete had the pre-tenure evaluation been completed. The appeals committee agreed, recommending Kuba be given an additional two years to apply for tenure, during which a pre-tenure review could be conducted at his request. The FPTC rejected the appeals committee's recommendation and reaffirmed the denial of Kuba's candidacy. In doing so, the FPTC gave Kuba six reasons for the denial: (1) no pre-tenure meeting; (2) insufficient evidence of quality teaching and advising per student evaluations; (3) marginal evidence of both university and greater community service; (4) no evidence, post 2002, of professional development; (5) concerns regarding collegiality and professionalism; and (6) lack of sufficient evidence supplied to demonstrate the seriousness with which you have taken this process, starting with your letter requesting tenure review.

Kuba filed a petition alleging breach of contract, seeking monetary damages and reinstatement as a tenure track employee with the ability to reapply for tenure. The district court found the employee handbook was a part of Kuba's employment contract creating certain enforceable rights, but determined William Penn had not breached the contract. Specifically, the district court found Kuba failed to exercise his right to a pre-tenure evaluation and the appeals process did not guarantee the committee's recommendation would be followed.

---

[1] Kuba also claimed he had not been given written findings by the FPTC as he believed was required by the handbook.

## II.    Standard of Review

We review breach of contract claims tried to the district court for correction of errors at law.  *NevadaCare Inc. v. Dep't of Servs.*, 783 N.W.2d 459, 465 (Iowa 2010).  However, the district court's "legal conclusions and application of legal principles are not binding on the appellate court."  *Id.*  We will reverse when the district court has applied erroneous interpretations of law, but findings of fact are binding upon us if supported by substantial evidence.  *Id.*

## III.    Discussion

Although complicated by the unique nature of tenure, this case concerns an employment contract.  Kuba's employment with William Penn was something more than an at-will employment situation, though less than permanent.  *See Taggart v. Drake Univ.*, 549 N.W.2d 796, 800 (Iowa 1996).  The parties essentially agree there was an employment contract, which incorporated the provisions of the employee handbook.  The only source of conflict is the requirements imposed on each party by the handbook.[2]  As the party who would suffer the loss if not established, Kuba has the burden of proving the breach of contract.  *See* Iowa R. App. P. 6.904(3)(e).

Kuba claims William Penn breached the contract in two ways: (1) by failing to conduct a pre-tenure evaluation and (2) by failing to adhere to the recommendation of the appeals committee.  In *Taggart*, a Drake University

---

[2] As the Eight Circuit Court of Appeals noted in *Okruhlik v. University of Arkansas*, 395 F.3d 872, 879 (8th Cir. 2005), "[w]e are mindful of the singular nature of academic decision-making, and we lack the expertise to evaluate tenure decisions or to pass on the merits of a candidate's scholarship."  Our review is not of the merits of Kuba's candidacy or the propriety of the University's ultimate decision, but is limited to whether the procedures guaranteed in Kuba's contract were carried out.

professor challenged a similar denial of tenure. 549 N.W.2d at 799–800. The plaintiff claimed her contract was breached when the university failed to establish procedures for her tenure evaluation specifically related to her area of expertise. *Id.* at 801. Our supreme court disagreed, illustrating the principle that we will not read into tenure procedures extra elements not found in the plain language of the contract, even where the procedures utilized create a subjective unfairness for the candidate. *Id.* at 801–02.

Kuba's situation is similar. The employee handbook creates a pre-tenure evaluation, but places the responsibility for initiating the process on the candidate. Kuba's proof he attempted to do so is scarce. A single email chain was introduced into evidence, the first of which is an email from Kuba noting he had previously requested the pre-tenure evaluation be scheduled. The last email in the chain is an attempt by University officials to do just that. At some point, the planned pre-tenure evaluation was cancelled but was not rescheduled. There is no evidence Kuba followed up on his request, or took additional steps to reschedule the evaluation. In fact, Kuba testified he forgot about the pre-tenure meeting requirement as time passed. Kuba also failed to present any evidence showing William Penn was uncooperative or refused to engage in the pre-tenure evaluation. We find Kuba failed to provide sufficient evidence he attempted to initiate the pre-tenure evaluation, without which William Penn was under no duty to do so.[3]

---

[3] During trial, testimony indicated other tenured faculty members were hired without engaging in the pre-tenure evaluation. Though failure to have the evaluation was cited as a reason for denying tenure, the handbook does not list the pre-tenure evaluation as a prerequisite to obtaining tenure. Considering the comprehensive guidelines and

We also find William Penn fully engaged in the appeals process. The process set out in the handbook only provides for a recommendation by the appeals committee to the FPTC. There is nothing in the handbook requiring the FPTC follow, or even consider, the recommendation of the appeals committee. Although this may result in a process with little meaningful effect, we will not read additional provisions into a contract.

Kuba was unable to produce any credible evidence William Penn failed to fully comply with any specific provision or requirement of the employment contract. Absent such proof, there is no breach of the contract.

**AFFIRMED.**

---

criteria in the handbook for evaluating a candidate for tenure, it is not clear the pre-tenure meeting would have changed Kuba's prospects for a successful candidacy.